IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>  vs.<br><br>GS INDUSTRIES, LLC,<br><br>    Defendant. | Case No. 21-cv-00078-DKW-KJM<br><br>**ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND (2) GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## INTRODUCTION

This case involves an insurance dispute concerning access from a property owned by Defendant GS in Honolulu.   The parties agree that, while GS has unfettered access *to* its property, its *vehicular* access *from* the property is limited by the largesse of the private owners of a roadway adjacent to the property.   GS contends that this limited access has resulted in a loss insured by First American's title insurance policy and, specifically, the policy's guarantee against "No right of access to and from the [property]."   First American, meanwhile, asserts that GS has no recourse against the policy because, among other things, there is *pedestrian* access from the property, exclusions under the policy related to government action apply, and/or GS has suffered no loss.

Having reviewed the parties' briefs and evidentiary submissions, the Court finds that, except as explained below, GS' arguments carry the day.   More precisely, the term "access" in the policy is ambiguous and, thus, must be construed against First American.   Further, based on the arguments presented, the policy's government exclusions do not apply.   Finally, while the evidence is currently far from clear whether a loss under the policy has actually been suffered, GS is entitled to pursue its diminution in value theory resulting from a covered risk.   Therefore, First American's motion for summary judgment, Dkt. No. 23, is DENIED, and GS' motion for partial summary judgment, Dkt. No. 28, is GRANTED, to the extent set forth herein.

## **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim in the case on which the non-moving party has the burden of proof.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).   In contrast, when the moving party bears the burden of proof, "it must come forward with evidence which would entitle it to a directed

verdict if the evidence went uncontroverted….."   *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).   This means that the movant "must establish beyond controversy every essential element" of its claims.   *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) (quotation omitted).   In assessing a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party.   *Genzler v. Longanbach*, 410 F.3d 630, 636 (9th Cir. 2005).

## <u>UNDISPUTED MATERIAL FACTS</u>

The facts set forth below are those that are undisputed (and/or not properly disputed), material, and established by the factual statements and evidence submitted by the parties in support of, and in opposition to, the pending motions for summary judgment.

On March 23, 2016, Defendant GS Industries, LLC (GS) took ownership of a parcel of real property located at 620 Waipa Lane, Honolulu, Oahu, Hawaiʻi (the Property).   Plaintiff's Concise Statement of Material Facts (PCSF) at ¶ 10, Dkt. No. 24.   GS' President is James Yamada.   Defendant's Concise Statement of Facts (DCSF) at ¶ 13, Dkt. No. 29.   At the time GS purchased the Property, it housed four buildings and a parking area that could accommodate as many as 50 cars.   11/3/21 Decl. of James Yamada at ¶ 6, Dkt. No. 29-1.   The Property, in fact, hosted up to "several hundred" cars per month.   *Id*. at ¶ 7.

Also on March 23, 2016, GS obtained a title insurance policy from Plaintiff First American Title Insurance Company (First American) with respect to the Property (the Policy).   *Id*. at ¶¶ 11-12; DCSF at ¶ 2.

The Policy names GS as the sole insured and insures GS' fee-simple interest in the Property in the amount of $3,500,000.   PCSF at ¶ 12.   The Policy insures GS "against loss or damage, not exceeding [$3,500,000], sustained or incurred by [GS] by reason of … [n]o right of access to and from the Land" (Covered Risk 4).   *Id*. at ¶ 13; DCSF at ¶ 25.   The Policy does not identify any issues with access to the Property, DCSF at ¶ 15, and does not define "access."   The Policy, however, does define "Land" and does so as the Property.   PCSF at ¶ 15.[1]   "Land" is further defined as *not* including "any property beyond the lines of [the Property], nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways," *but* "this does not modify or limit the extent that a right of access to and from the Land is insured by this policy."   3/23/16 Owner's Policy of Title Insurance at 3, Dkt. No. 24-7.   The definition of Land, in

---

[1]While GS appears to oppose this factual statement, *see* Dkt. No. 34 at ¶ 15, GS does not oppose the fact that, in the Policy, "Land" is defined as the Property.   GS' opposition, instead, appears to be that the definition of Land includes language omitted in First American's factual statement. *See id*.   Herein, the Court has included all relevant language concerning the definition of Land in the Policy.

other words, does not modify First American's obligations under Covered Risk 4. PCSF at ¶ 16.

The Policy is a "contract of indemnity against actual monetary loss or damage sustained or incurred by [GS when GS] has suffered loss or damage by reason of matters insured against by [the Policy]."  PCSF at ¶ 18.   The Policy limits First American's liability to the lesser of $3,500,000 or "the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by [the Policy]."   Owner's Policy of Title Insurance at 4.

The Policy excludes coverage for, *inter alia*, (i) any "governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to [] the occupancy, use, or enjoyment of the Land" (Exclusion 1(a)(i)); (ii) any "governmental police power" (Exclusion 1(b)); or (iii) "defects, liens, encumbrances, adverse claims, or other matters … resulting in no loss or damage to [GS]" (Exclusion 3(c)).   PCSF at ¶ 20.   The Policy is governed by Hawaiʻi law.   *Id*. at ¶ 14.

The Property is located in central Honolulu, northwest of N. Vineyard Boulevard and fronting Waipa Lane.   DCSF at ¶ 3; PCSF at ¶ 6.   A portion of Waipa Lane is owned by the City & County of Honolulu (Honolulu).   PCSF at

¶ 3.   Two other parts of Waipa Lane, which are referred to herein as Parcel 86 and Parcel 91, are privately owned (collectively, the Private Waipa Lane Parcels).   *Id*.

On July 17, 1956, Honolulu's Resolution 457 designated Waipa Lane as a one-way road to the extent that "[a]ll vehicular traffic shall move only from Waikiki (south) toward Ewa (north) entering from North Vineyard [Boulevard] in the near vicinity of the intersection of North Vineyard and Liliha Street[], then moving Ewa to its makai-mauka fork and continuing into North Vineyard [Boulevard]."   PCSF at ¶¶ 1-2; 7/17/56 Resolution of the City & County of Honolulu, Dkt. No. 24-4 at 5-6.[2]

Vehicular access to (ingress) and from (egress) the Property is via Waipa Lane.   DCSF at ¶ 9.   Ingress to the Property is made via the publicly owned portion of Waipa Lane.   PCSF at ¶ 4.   Vehicular egress from the Property is made via the Private Waipa Lane Parcels, which provide access to North Vineyard Boulevard.   *Id*. at ¶ 5.   Approximately 20 parcels of real property, including the Property, rely on the Private Waipa Lane Parcels for egress to North Vineyard Boulevard.   *Id*. at ¶ 7.   Although the Private Waipa Lane Parcels are not owned by Honolulu, on January 14, 2021, an employee−Jordan Dildy−of Honolulu's

---

[2]In citing to the 7/17/56 Resolution of the City & County of Honolulu, the Court cites the page numbers assigned by CM/ECF in the top right corner of the document, *i.e*., Page 5 of 8.

Department of Planning and Permitting (DPP) stated that Honolulu maintains the Private Waipa Lane Parcels and considers them to be public.   1/14/21 Email from Jordan Dildy to Aimee Hui, Dkt. No. 24-6 at 1.   On January 26, 2021, the same DPP employee clarified that the portions of Waipa Lane that are privately-owned do not become public roads merely because Honolulu maintains them.   1/26/21 Email from Alan Van Etten to Amy Starrett & Aimee Hui (incorporating 1/26/21 Email from Jordan Dildy to Kenneth Wong), Dkt. No. 29-9 at 2-3.[3]

None of the owners of Parcels 86 or 91 have given notice to GS of their intent, or exercised their right, to block the use of Waipa Lane.   DCSF at ¶ 10.

After purchasing the Property, GS entered into a lease of the same with Cedar Assembly of God Church (CAGC).   DCSF at ¶ 19.   Yamada was the founder and senior pastor of CAGC.   *Id*. at ¶ 20.   As part of CAGC's "vision", CAGC planned to expand the Property and build a transitional housing complex with 44 affordable rental apartments.   Yamada Decl. at ¶ 21.

In August 2019, CAGC applied for affordable housing exemptions from the DPP.   PCSF at ¶ 21.   In response to CAGC's application, on October 4, 2019, the DPP issued a Notice of Incomplete Application (the Notice).   *Id*. at ¶ 22; DCSF at

---

[3]In citing the 1/26/21 Email from Alan Van Etten to Amy Starrett and Aimee Hui, the Court uses the page numbers assigned by CM/ECF in the top right corner of the document, *i.e.*, "Page 2 of 5."

¶ 23.   Among other "incomplete" items, the DPP's response observed that a portion of Waipa Lane was privately-owned, and CAGC had not shown any legal right to use the same.   10/4/19 Notice of Incomplete Application, Dkt. No. 24-5 at 72.[4]   The DPP stated that, in any resubmitted application, CAGC must show that it had a legal right to use the privately-owned portion of Waipa Lane.   *Id*. According to Yamada, the Notice was the "first time" GS had been informed of the foregoing issue.   Yamada Decl. at ¶ 23.

As a result of the Notice, on October 22, 2019, GS tendered a claim to First American (the Claim).   PCSF at ¶ 25.   The Claim contended that Covered Risk 4 had been implicated because GS and CAGC lacked a right of access from the Property.   *Id*. at ¶ 26.   The Claim further stated that "[t]he lack of road access has prevented [GS] from obtaining permits needed to develop the [Property]." 10/22/19 Email from Kenneth Wong to Lorrin Hirano, Dkt. No. 24-8.   The Claim requested that First American "reimburse" GS for the purchase price of an interest in one of the Private Waipa Lane Parcels, which GS anticipated purchasing for approximately $10,000.   *Id*.[5]

---

[4]In citing to the 10/4/19 Notice of Incomplete Application, the Court uses the page numbers assigned by CM/ECF in the top right corner of the document, *i.e.*, "Page 72 of 74."
[5]In its concise statement of facts, First American asserts that the Claim requested that First American purchase an interest in the Private Waipa Lane Parcels.   PCSF at ¶ 28.   While GS does not oppose this assertion, Dkt. No. 34 at ¶ 28, the email to which First American cites (Dkt.

On January 28, 2020, First American denied the Claim.   PCSF at ¶ 29.

First American did so because (1) the Policy did not insure vehicular access to and

from the Property and (2) Exclusions 1(a)(i) and 1(b) applied. *Id*. at ¶ 30; DCSF at

¶ 29.   First American's denial included a tax map of the Property, with relevant

parcels of real property highlighted.   1/28/20 Letter from Amy Starrett to Kenneth

Wong, Dkt. No. 29-7 at 8.[6]   The tax map is a publicly available document.   Decl.

of Kenneth Wong at ¶ 7, Dkt. No. 29-3.

Thereafter, GS sent correspondence to First American, requesting that First

American reconsider its denial.   PCSF at ¶ 31.   Among other things, GS stated

that it had suffered damages in the form of fees incurred "in anticipation of

securing requisite governmental entitlements to develop and finance its new 44-

unit apartment development."   3/4/20 Letter from Alan Van Etten to Amy Starrett

at 13-14, Dkt. No. 32-5.

First American denied GS' reconsideration request by letters dated April 2,

2020, August 4, 2020, January 26, 2021, and February 1, 2021.   *Id*. at ¶ 32.   In

the letter dated April 2, 2020, First American additionally offered that coverage

---

No. 24-8), although far from a model of clarity, suggests that GS sought "reimburse[ment]" from First American and did not demand a direct purchase.
[6]In citing to the 1/28/20 Letter from Amy Starrett to Kenneth Wong, the Court uses the page numbers assigned by CM/ECF in the top right corner of the document, *i.e.*, "Page 8 of 9."

had been denied because Waipa Lane was not part of the "Land" insured by the Policy.   4/2/20 Letter from Alexandra Wong to Alan Van Etten at 5, Dkt. No. 24-10.   In the letter dated January 26, 2021, First American added further that coverage had also been denied because Exclusion 3(c) applied.   1/26/21 Letter from Amy Starrett to Alan Van Etten at 1-2, Dkt. No. 24-12.

The parties attempted pre-suit mediation but did not reach an agreement. 10/28/21 Decl. of Aimee Hui at ¶ 5, Dkt. No. 24-2.

## RELEVANT PROCEDURAL BACKGROUND

This lawsuit was initiated on February 8, 2021 with the filing of First American's Complaint against GS.   Dkt. No. 1.   Therein, First American seeks declaratory relief that: (1) the Policy does not cover any loss due to the lack of vehicular access from the Property (Claim One); (2) any loss due to the lack of vehicular access from the Property is subject to Exclusions 1(a)(i) and 1(b) (Claim Two); (3) any loss due to the lack of vehicular access from the Property is subject to Exclusion 3(c) (Claim Three);[7]  (4) the Policy does not afford coverage for a lack of interest in the Private Waipa Lane Parcels because Waipa Lane falls outside

---

[7]Claim Three also alleges that any loss is excluded from coverage by Exclusion 3(d) of the Policy.   Dkt. No. 1 at ¶¶ 27, 28(a).   The summary judgment briefing, however, does not raise this exclusion as an issue and, therefore, the Court does not further address it.

the Policy's definition of "Land" (Claim Four); and (5) the Policy affords no coverage for a lack of access from the Property (Claim Five).

GS has answered the Complaint and filed Counterclaims.   Dkt. Nos. 9, 9-1. In its Counterclaims, GS seeks declaratory relief as to First American's duties under the Policy (Claim One) and attorney's fees (Claim Two).   Dkt. No. 9-1.

On November 1, 2021, First American filed one of the instant motions for summary judgment, together with a concise statement of facts.   Dkt. Nos. 23-24. First American seeks summary judgment with respect to all claims in its Complaint and all counterclaims asserted by GS (First American's motion).   Dkt. No. 23. GS has filed an opposition to First American's motion, Dkt. Nos. 33-34, and First American has filed a reply, Dkt. No. 35-36.

On November 3, 2021, GS filed a motion for partial summary judgment, together with a concise statement of facts.   Dkt. Nos. 28-29.   GS seeks summary judgment on "three discrete questions of law": (1) whether the Policy insures vehicular access to and from the Property; (2) whether Exclusions 1(a)(i) and 1(b) apply; and (3) the damages or loss GS must establish under the Policy (GS' motion).   Dkt. No. 28.   First American has filed an opposition to GS' motion, Dkt. Nos. 31-32, and GS has filed a reply, Dkt. Nos. 37-38.

This Order now follows.[8]

## DISCUSSION

In its motion, First American argues that it is entitled to summary judgment on all claims and counterclaims in this lawsuit based on four principal arguments: (1) the Policy does not insure vehicular access from the Property; (2) GS' claim for coverage does not concern "Land" insured by the Policy; (3) GS' claim is excluded from coverage by Exclusions 1(a)(i) and 1(b); and (4) GS has not suffered any loss resulting from a lack of vehicular access from the Property.   Dkt. No. 23-1.   For its part, GS argues that it is entitled to summary judgment because (1) the Policy insures a right of vehicular access from the Property; (2) Exclusions 1(a)(i) and 1(b) do not apply; and (3) GS has suffered a loss due to the lack of a right to vehicular access from the Property because the Property "is now valued at significantly less."   Dkt. No. 28-1.

Because these arguments largely overlap, the Court addresses them together. The Court does so by addressing, first, the parties' lack of vehicular egress claims, second, whether GS may establish a loss from the alleged diminution in value of the Property, and, third, whether Exclusions 1(a)(i) and 1(b) apply.

---

[8]On December 6, 2021, the Court elected to decide the two pending motions for summary judgment without a hearing pursuant to Local Rule 7.1(c).   Dkt. No. 40.

I.    **Coverage**

The parties' primary coverage dispute concerns the term "access" in the Policy.   In short, it is undisputed that the Policy insures against "No right of access to and from the Land[]" and that GS' *vehicular* access *from* the Property is compromised because it is dependent on the owners of the Private Waipa Lane Parcels.[9]   The parties, therefore, fight over whether the term "access" includes vehicular access.   For the reasons discussed below, the Court finds that, because "access" is ambiguous in the Policy, the term must be construed against First American, as the insurer, to include vehicular access in the manner urged by GS.

Ordinarily, "the insured has the burden to prove that a loss is covered under the terms of the insurance policy."   *Sentinel Ins. Co., Ltd. v. First Ins. Co. of Hawaii, Ltd.*, 875 P.2d 894, 909 n.13 (Haw. 1994).   In doing so, the terms of the policy, including undefined terms, should be interpreted according to their "plain, ordinary, and accepted sense in common speech" unless a different meaning is intended.   *Allstate Ins. Co. v. Pruett*, 186 P.3d 609, 617 (Haw. 2008).   However, "because policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys," "they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer."   *Id.*

---

[9] GS' access *to* the Property is not in dispute here.

(quotation and citation omitted).   In addition, the construction of a contract is a question of law.   *Tri-S Corp. v. W. World Ins. Co.*, 135 P.3d 82, 98 (Haw. 2006).

Here, GS argues that it has suffered a loss because it lacks a right to vehicular access from the Property.   First American, on the other hand, contends that vehicular access from the Property, in whatever form, is not covered under the Policy.   In this light, to determine whether GS, as the insured, has met its burden of proving a covered loss under the Policy, the Court must interpret the meaning of "access" as used in the Policy.   The Court finds that the plain, ordinary, and accepted meaning of access includes vehicular access.   This is particularly so where, as here, the Property is a parcel in central Honolulu, surrounded by roadways, and dependent on vehicular traffic both before GS' acquisition and now. *See Allstate Ins.*, 186 P.3d at 617 (stating that "the rule is that policies are to be construed in accord with the reasonable expectations of a layperson[]") (quotation and citation omitted).   Conversely, the Policy cannot be limited to insuring pedestrian access, as First American asserts, because insuring pedestrian access in Honolulu's urban sprawl would be virtually meaningless.   In this environment, it is difficult to conceive of how property would not have pedestrian access and where insurance would therefore be of any value.   If insuring "access" is to have

14

any meaning in this context, in other words, it must be insuring access beyond that of the pedestrian variety.

First American contends otherwise, citing non-binding caselaw and Black's Law Dictionary (Black's).   *See* Dkt. No. 23-1 at 15 & n.7.   Black's defines "access" as "[a] right, opportunity, or ability to enter, approach, pass to and from, and communicate with[.]"   Black's Law Dictionary 16 (10th ed. 2014).   While the Court does not take issue with the use of Black's as a reference, *see Allstate Ins.*, 186 P.3d at 618 (using Black's for its definition of "person"), or the accuracy of First American's quote, this definition does nothing to resolve the debate.[10,11]

First American further contends that "access" does not include vehicular access because the company offers "optional additional coverage" that specifically insures for the lack of "vehicular and pedestrian access," coverage which GS did not buy.   Dkt. No. 23-1 at 15.   This argument, however, proves the point of the ambiguity in the Policy.[12]   Notably, immediately prior to making this argument,

---

[10]In defining "access," Black's gives as an illustration "access to the courts[.]"   Although not wishing to dwell, the Court doubts that "access to the courts" is the most apt illustration of the plain, ordinary, and accepted meaning of "access" as used in the Policy−a title insurance policy.
[11]Similarly, beyond being non-binding, the caselaw cited by First American is not particularly helpful in that context matters.   With that in mind, the case that First American spends great effort attempting to distinguish – *Marriot Fin. Servs. v. Capital Funds, Inc*., 217 S.E.2d 551 (N.C. 1975) – is as factually close to this one as any on which First American relies.
[12]Moreover, there is no evidence that this "optional" coverage was ever explained or offered to GS, and GS specifically denies that it was.   Dkt. No. 33 at 17.

15

First American also asserted that "access" under the Policy *includes* pedestrian access.   *Id*.   That cannot be the case, though, if First American's assertion about its "optional additional coverage" is to be taken seriously.   In other words, if the optional coverage means that "access" cannot possibly include vehicular access, the same must be true for pedestrian access, given that the optional coverage insures *both*.   At best, this argument simply begs the question of what "access" the Policy insures – air, water, underground, vehicular.   Each (and others) are all possibilities.   When that is the case, the Court has little problem finding the term ambiguous.

As a result, because First American is the insurer, the Court construes the ambiguous term "access" in favor of GS, and finds that it includes vehicular access.   *See Gov't Emps. Ins. Co. v. Franklin for Franklin*, 662 P.2d 1117, 1119 (Haw. 1983).   GS is therefore entitled to summary judgment on this issue, while First American is not.

**II.**   **Loss**

Both First American and GS argue that they are entitled to summary judgment with respect to the issue of loss.   First American argues that, even if a lack of vehicular access is insured under the Policy, GS has not sustained any loss or damage as a result.   Dkt. No. 23-1 at 20-23.   First American asserts that this is

because GS' access to the Private Waipa Lane Parcels has never been restricted and any suggestion that access might be restricted at some point in the future is speculative.   *Id*. at 21-23.   For its part, GS does not dispute that it has never been restricted from using the Private Waipa Lane Parcels.   Dkt. No. 34 at ¶ 9 (admitting PCSF at ¶ 9).   Instead, GS contends that it has suffered loss because "the Property's value is significantly diminished by its lack of legal access…." Dkt. No. 33 at 25.   In reply, First American reiterates that GS' use of the Private Waipa Lane Parcels has never been restricted.   Dkt. No. 35 at 12-13.   First American also asserts that GS' argument with respect to the value of the Property is misplaced because it "presumes" the Policy insures title to the Private Waipa Lane Parcels.   *Id*. at 13-14.

The Court agrees with GS to the extent that, if the value of the Property has diminished due to restrictions on vehicular egress that were never disclosed, then GS would be able to show a loss insured by the Policy.   *See* Owner's Policy of Title Ins. at 1 (Covered Risk 4), 4 (¶ 8(a)(ii)).   The Court, thus, disagrees with First American's arguments that any loss would be speculative or "presumes" the Policy insures title to the Private Waipa Lane Parcels.   Put simply, if the value of the *Property* is diminished, then the Court fails to see why that would not be a loss insured by the Policy when First American itself points out that the *Property* is

insured.   *See* PCSF at ¶ 13.   This is so even if the reason for the diminution in value is in some way related to the Private Waipa Lane Parcels being privately owned.[13]

As a result, the Court denies First American's request for summary judgment with respect to this issue.   To the extent GS seeks summary judgment to determine whether a diminution in value to the Property due to a covered risk is a loss insured by the Policy, summary judgment is granted in GS' favor.[14]

## III.   <u>Government Exclusions</u>

---

[13]For a similar reason, the Court disagrees with First American's argument, with respect to its fourth claim, that the meaning of "Land" under the Policy warrants summary judgment in First American's favor.   First American accepts that "Land" under the Policy means the *Property*.   PCSF at ¶ 13.   Thus, any alleged loss in value of the *Property* would also be a loss in the value of the "Land."

[14]Although GS purports *not* to be seeking summary judgment with respect to "the exact amount of diminution in value[,]" GS has submitted evidence it alleges shows that the Property's value has diminished.   Dkt. No. 33 at 25.   This evidence, however, shows no such thing.   As an initial matter, in its concise statement of facts, GS fails to properly present facts in this regard.   Notably, instead of following Local Rule 56.1(b) by actually presenting *facts*, GS simply states: "Expert Report of Ted Yamamura[]" and "Expert Report of Richard Lau."   DCSF at ¶¶ 34-35.   At best, this is lazy in the extreme.   As important, when the purported expert reports are reviewed, they provide little insight into whether the *Property's* value has diminished.   As for Lau's report, there is no evidence that, simply because a lender may not approve a loan secured by the Property, its value has been diminished.   *See* Dkt. No. 29-14 at 4-5.   As for Yamamura's report, it is partly based on "data on landlocked property…."   Dkt. No. 29-12 at 1.   There is no explanation, however, how any of that data is relevant to the valuation of the Property.   As far as the Court can tell, the data appears irrelevant, given that none of it concerns property on Oahu (let alone central Honolulu), and there is no explanation of how the properties being compared are, in fact, comparable.   *See id.* at 3.

First American argues that the loss GS allegedly suffered is exempt from coverage under Exclusions 1(a)(i) and 1(b).   Dkt. No. 23-1 at 18-20.[15]

In light of the preceding discussion, resolution of this issue is straightforward.   First American's argument is premised on GS suffering loss "by way of the Notice…."   The Notice, however, is not the basis for GS' alleged loss. Instead, as just discussed, the basis for GS' loss−the alleged diminution in value of the Property−is GS' lack of a right to vehicular access from the Property.   Thus, while GS may or may not have learned of its lack of a right to vehicular access from the Notice, it is not the Notice that has caused the alleged diminution in value.   In this light, neither governmental regulation nor police power, Exclusions 1(a)(i) and 1(b), is implicated here.

As a result, to the extent set forth above, GS is entitled to summary judgment on this issue, while First American is not.

---

[15]First American also asserts that Honolulu has "withdrawn" the requirement that CAGC show a legal right to access the Private Waipa Lane Parcels.   Dkt. No. 23-1 at 9, 18-19.   The only *evidence* to support this statement, however, is an email from Jordan Dildy.   *See* PCSF at ¶ 24 (citing Dkt. No. 24-6).   That email, however, never mentions the word "withdrawn" or the stated requirement.   *See generally* Dkt. No. 24-6.   Nor does it set forth Mr. Dildy's purported authority.   Therefore, on this record, the Court cannot find that the requirement has been "withdrawn," as First American contends.

## **CONCLUSION**

For the reasons set forth herein, the Court (1) DENIES First American's motion for summary judgment, Dkt. No. 23, and (2) GRANTS GS' motion for summary judgment to the extent set forth herein.

IT IS SO ORDERED.

DATED: December 16, 2021 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge